UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGER LEASING CORP., a Nevada corporation,<br><br>      Plaintiff,<br><br>  v.<br><br>Barge PT. POTRERO, official number 523213, in rem, TED BUHL and JANE DOE BUHL, individually, and the marital community composed thereof; BUHL DIVING & SALVAGE, a sole proprietorship, in personam,<br><br>      Defendants.<br><br>AND ALL RELATED ACTIONS | No. C-05-5117 SC<br><br>ORDER RE: CLAIMANTS' MOTION TO QUASH ARREST OR IN THE ALTERNATIVE FOR COSTS SECURITY<br><br>AND<br><br>ORDER RE: DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION |

## I. INTRODUCTION

Claimants in this case, Riverview Equipment Company LLC and Jerico Products, Inc. ("Claimants"), filed a motion seeking an adversary hearing pursuant to Federal Rule of Civil Procedure Supplemental Admiralty Rule E(4)(f) ("Supplemental Rule E(4)(f)") and Local Admiralty and Maritime Rule 4-8 ("Local Maritime Rule 4-8"). The Court held an adversary hearing on March 23 and 29, 2006 regarding the following limited issues: (1) whether the maritime lien was properly transferred to Plaintiff Corporation; (2) whether Plaintiff is estopped from enforcing its maritime lien; and (3) whether Claimants are entitled to security for costs. Defendants Ted Buhl and Buhl Diving and Salvage ("Defendants" or "Buhl") have also moved to stay the action and compel arbitration.

For the reasons set forth herein, the Court hereby DENIES Claimants' motion to quash the arrest and GRANTS Defendants' motion to stay the action and compel arbitration.

## II. BACKGROUND

The facts surrounding the alleged maritime lien and the arrest of in rem Defendant, the Barge Pt. Potrero ("Barge" or "in rem Defendant"), have been set forth in previous Orders of this Court, familiarity with which is presumed. For the purposes of this Order, it is necessary to note only that Plaintiff filed a verified Complaint on December 12, 2005, alleging that he held a maritime lien on the Barge as a result of outstanding charges from salvage and towing services Plaintiff provided in May and June 2005. Plaintiff first provided maritime services to Buhl pursuant to an oral agreement, and subsequently entered into a written contract titled "Towage Agreement, Terms and Conditions" ("Towage Agreement").

After presenting Buhl with an invoice detailing allegedly outstanding charges, Plaintiff sought and obtained an Order arresting the Barge and transferring control of the vessel to a substitute custodian. Claimants have since posted security for the Barge, are in custody of the vessel, and have now moved for an Order quashing the arrest, or, in the alternative, for costs security. Defendants have joined Claimants in arguing that the lien should be quashed, and have also separately moved this Court to stay the action and compel the parties to arbitrate their claims. Plaintiff has opposed these motions.

## III. **LEGAL STANDARD**

### A. Validity of the Lien

Under the Maritime Lien Act, 46 U.S.C. § 31342, an entity has a lien on a vessel if they provide necessaries to the vessel on the order of the owner or an individual authorized by the owner. A post-arrest adversary hearing under Rule E(4)(f) "is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." Lion de Mer v. M/V Loretta V, No. Civ. L-98-921, 1998 WL 307077 at *2 (D. Md. Apr. 3, 1998). Thus, Plaintiff bears the burden of showing that "probable cause" existed to arrest the vessel, which "translates roughly to requiring that plaintiff show entitlement to a maritime lien." Newport News Shipbuilding and Dry Dock Company v. S.S. Independence, 872 F. Supp. 262, 265 (E.D. Va. 1994).

### B. Agreement to Arbitrate

Under the United States Arbitration Act, 9 U.S.C. §1 et seq., Federal Courts must order the parties to arbitrate a dispute that falls within the purview of a valid and binding agreement to arbitrate. Given the compulsory language of the Act, the Court's inquiry on a motion to compel arbitration is necessarily a limited one, and should involve examining only whether (1) there is an agreement to arbitrate; (2) there are arbitrable claims; and (3) whether there has been a waiver of the right to arbitrate by the

moving party or other defense to arbitration.  Schwarzer, Tashima & Wagstaff, <u>Federal Civil Procedure Before Trial</u>, § 16.99 (2004 ed.); <u>see</u> <u>Chiron Corp. v. Ortho Diagnostic Systems, Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000) .

**IV. DISCUSSION**

    A.   <u>Claimants' Motion to Quash the Arrest</u>

In support of their position that the arrest of the Barge should be quashed, Claimants first argue that Plaintiff Greger Leasing Corp. cannot hold a lien on the Barge because that entity did not exist at the time the salvage and towing services were provided.  <u>See</u> Claimants' Motion to Quash Arrest or in the Alternative, for Costs Security at 7-9 ("Clmts.' Mot.").  Rather, those services were furnished by Ron Greger d/b/a Greger Leasing, which was subsequently incorporated under the laws of the State of Nevada, forming Greger Leasing Corp.  Claimants argue that Plaintiff has not proffered any evidence demonstrating that the lien was formally transferred from the entity that provided the services - Ron Greger d/b/a Greger Leasing - to the Plaintiff Corporation.  <u>Id</u>. at 8-9.

However, Claimants' arguments in this respect are misguided.  Not only has Plaintiff proffered a document that purports to transfer all assets and liabilities from Greger Leasing to Greger Leasing Corp., but Claimants have overlooked the fact that Nevada law provides that all assets and liabilities of a predecessor

4

business organization become the assets and liabilities of the successor organization when a conversion from one form to another takes place. See Nev. Rev. Stat. § 92A.250(3)(a)-(g). Such a transfer occurs by operation of law, and does not depend on execution of a formal assignment. Id. Accordingly, the right to enforce a maritime lien, if held by Ron Greger d/b/a Greger Leasing, passed to Plaintiff upon its incorporation. Claimants' argument on this point is therefore entirely without merit.

Claimants also assert that, even if Plaintiff did possess a lien, Plaintiff is estopped from enforcing that lien because he allegedly remarked that the sum Buhl owed him for salvage and towing services had been satisfied. See Clmts.' Mot. at 9-11. Claimants assert that they relied on Plaintiff's representation to that effect, and that their reliance has operated to their detriment. Id. Accordingly, Claimants assert, Plaintiff is estopped from enforcing the lien.

In response, Plaintiff disputes ever having made the alleged remark, and appeals to the Court to consider the likelihood of waiving security on a debt that Plaintiff claims is in excess of $453,000.00.

At the adversary hearing, Claimants proffered the testimony of Aaron and Christian Lind, who claim that Plaintiff said that the account between himself and Buhl was "all good." Interpreting this to mean that Plaintiff would not assert a lien against the

5

vessel, Claimants purchased the Barge from Buhl only to later learn that Plaintiff intended on enforcing his lien by means of arresting the vessel and proceeding in rem.

In response, Plaintiff denied ever having said anything that could be construed as a representation that Buhl's account had been satisfied or that Greger would not assert a lien on the vessel.

While the Court does note that Plaintiff's explanation with respect to the chronology and substance of important events in this case is lacking in coherence and persuasiveness, there is insufficient evidence to find that Plaintiff actually made the purported statement, or that, even if made, it carried the legal meaning that Claimants evidently ascribed to it.  The alleged utterance - that Plaintiff was "all good" with respect to Buhl's account - was vigorously disputed by Plaintiff, is susceptible to different interpretations, and appears to have been made in an offhand manner, if actually made.  Furthermore, the Court notes that it would be truly extraordinary for a creditor to waive security on a large debt merely upon oral representation by the debtor that payment of the debt was forthcoming.  Simply stated, the Court finds that the evidence on this point is insufficient to support a ruling that Plaintiff is estopped from asserting a maritime lien, and, accordingly, Claimants' motion to quash the arrest is DENIED.

Despite the repeated efforts of the parties to turn a limited adversary hearing into a full-blown trial on the merits, the Court's inquiry at this point remains focused on the narrow issue of whether Plaintiff has demonstrated probable cause to believe a lien exists.  In this respect, the Court finds that Plaintiff has succeeded.  However, in so ruling, the Court expresses no opinion as to the actual amount owed Plaintiff for the work performed, and in no way endorses Plaintiff's theory that the full value of the Barge is necessary to secure his purported account receivable.

B.   Motion for Costs Security

Claimants have also moved for an award of costs security pursuant to Supplemental Admiralty Rule E(2)(b) and Admiralty Local Rule 7-1.  Supplemental Admiralty Rule E(2)(b) provides that:

> the court may…require the plaintiff, defendant, claimant, or other party to give security, or additional security, in such sum as the court shall direct, to pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court.

Admiralty Local Rule 7-1 directs that "[u]nless otherwise ordered, the amount of security shall be $500."

Claimants assert that the Court should order Plaintiff to post a bond because good cause exists to question Plaintiff's ability to satisfy an award of costs against him.  Clmts.' Mot. at 13-14. In support of this position, Claimants note that (1) Plaintiff is an out-of-state corporation formed "solely for the purposes of

7

prosecuting this action"; (2) Plaintiff corporation was formed only recently, on October 18, 2005, and allegedly has no assets; and (3) Greger "would hide behind the asset-less Greger Corp. to avoid paying a judgment for costs." Id. Claimants aver that their costs to date have reached at least $10,000.00, and that future costs of $15,000.00 are reasonably anticipated. Id.

Claimants overlook the fact that the Court is limited by Supplemental Admiralty Rule E(2)(b) to awarding security for costs that will be awarded by this Court or upon appeal. However, there is no basis for the presumption, necessary to Claimants' motion, that an award of attorneys' fees will be forthcoming. Claimants have not referred the Court to any law, rule of this Court, or contractual provision that would entitle Claimants to an award of attorneys' fees upon issuance of a judgment in their favor. Accordingly, the Court finds that to the extent that Claimants' motion seeks security in excess of the $500.00 provided for by Admiralty Local Rule 7-1, it is entirely unsupported by the law, and therefore DENIES Claimants' motion for costs security. The Court will grant Claimants an opportunity to renew their motion for costs security in excess of $500.00, if Claimants present an appropriate basis for such an increase in security.

//
//
//

8

C.   <u>Defendants' Motion to Stay and Compel Arbitration</u>

Plaintiff has not contested that the Towage Agreement contained a binding arbitration clause[1], or that the claims asserted by Plaintiff in his verified Complaint are arbitrable. Rather, Plaintiff contends that any claim Defendants might have had to compel arbitration has been waived by Defendants' participation in the litigation. This, Plaintiff asserts, is inconsistent with a right to arbitration and would prejudice Plaintiff should the Court grant Defendants' motion. <u>See</u> Plaintiff's Opposition to Defendants' Motion to Stay Proceedings and Compel Arbitration at 3-5 ("Pl.'s Opp.").

To date, Defendants have filed an Answer, which contained Defendants' compulsory counterclaims. Even without reference to the long line of United States Supreme Court and Ninth Circuit precedents that clearly outline a deferential posture for Courts

---

[1] The Towage Agreement, Paragraph 17, provides:

17. Arbitration: Any dispute between the Tower and Owner arising out of this Agreement shall be arbitrated at_____, in the following manner, One (1) arbitrator is to be appointed by each of the parties hereto and a third by the two (2) so chosen. In all respect [<u>sic</u>] the procedures followed and the conduct of the arbitration shall be in accordance with the Federal Arbitration Act (9 U.S.C. 1, et seq.), and the decision of the arbitrators or any two (2) of them shall be final and binding. For the purpose of enforcing any award, this provision may be made a rule of the Federal court sitting in the state where the arbitration is held. The arbitrators shall, if possible, be commercial men or attorneys possessing experience in matters and things to be arbitrated. The arbitrators are empowered to assess the cost and expense of arbitration (including the arbitrator's fees) against the losing party in whole or in part.

considering enforceability of arbitration clauses, Plaintiff's position on this issue is extremely weak. Not only have courts held that merely filing an answer containing compulsory counterclaims does not constitute action inconsistent with the right to arbitrate, see Howard Fields & Assoc. v. Grand Wailea Co., 848 F. Supp. 890, 898 (D. Haw. 1993), but also courts have declined to find a waiver of the right to arbitrate even after 21 months elapsed between the filing of the Complaint and the motion to compel arbitration. See China Union Lines v. American Marine Underwriters, 458 F. Supp. 132 (S.D.N.Y. 1978); see also Tenneco Resins, Inc. v. Davy Int'l AG, 770 F.2d 416, 420-21 (5th Cir. 1985) (finding that a party did not waive right to arbitration where it asserted right to arbitration in its answer but did not move to compel arbitration until eight months later and participated in discovery); Carolina Throwing Co. v. S & E Novelty Corp., 442 F.2d 329 (4th Cir. 1971) (holding that a delay of three months and filing a counterclaim did not constitute a waiver of arbitration). Furthermore, the Ninth Circuit requires a party seeking to prove waiver of arbitration to show both acts inconsistent with the right to arbitration and prejudice to the party opposing arbitration resulting from the inconsistent acts. Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986).

In this case, Defendant has consistently asserted the right to arbitrate, see Answer at 10; Declaration of Cory Birnberg ¶¶ 5-6, 8 Exhibits A, C, D, and has participated in the litigation only by filing an Answer containing compulsory counterclaims. Discovery has not begun, and no trial date is set. Simply put, Defendant's actions are not, as a matter of law, inconsistent with the right to arbitrate, and Plaintiff will suffer no prejudice from an order staying all proceedings in this matter and directing Plaintiff and Defendants to proceed with arbitration as called for by the Towage Agreement. Defendants' motion is therefore GRANTED.

**V.   CONCLUSION**

The Court finds that Plaintiff has demonstrated that it is entitled to a lien on in rem Defendant in this matter. Claimants' motion is therefore DENIED, except that Plaintiff is ORDERED to post security in the amount of $500.00. Defendants' motion is hereby GRANTED, all proceedings in this matter are hereby STAYED, and Plaintiff and Defendants ORDERED to proceed to arbitration as provided by the Towage Agreement.

IT IS SO ORDERED.

Dated: April 5, 2006

[signature]

UNITED STATES DISTRICT JUDGE